# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 9, 2014

## STATE OF TENNESSEE v. KENNETH MOSES

### Appeal from the Criminal Court for Sullivan County
### No. S59430     Robert H. Montgomery, Jr., Judge

---

### No. E2014-01013-CCA-R3-CD - Filed March 20, 2015

---

Defendant, Kenneth Moses, was charged by presentment for one count of rape of a child and one count of incest. A jury found Defendant guilty as charged. The trial court sentenced Defendant to consecutive sentences of 25 years for rape of a child and six years for incest. In this appeal as of right, Defendant contends that the evidence was insufficient to support his convictions and that the trial court abused its discretion by ordering his sentences to run consecutively. After a thorough review of the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

THOMAS T. WOODALL, P. J., delivered the opinion of the Court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Larry Dillow, Kingsport, Tennessee, for the appellant, Kenneth Moses.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Barry Staubus, District Attorney General, Teresa Nelson and Emily Smith, Assistant District Attorneys General, for the appellee, the State of Tennessee.

## OPINION

*Trial*

Officer Richard Kindle, of the Sullivan County Sheriff's Department, was assigned to investigate an allegation of sexual abuse against the victim, S.B. (we will refer to the minor victim by her initials), that occurred on April 24, 2011. Officer Kindle testified that the victim was interviewed by Amy Bachman, of the Children's Advocacy Center, on May

2, 2011. Officer Kindle reviewed Ms. Bachman's notes from the interview and later met with the victim and her mother at their residence on May 16, 2011.

Officer Kindle also took a statement from Defendant. Defendant stated that the victim was his eight-year-old stepdaughter and that he had a six-year-old biological daughter with the victim's mother. Defendant and the victim's mother began a relationship when the victim's mother was two months pregnant with the victim. On Easter Sunday in 2011, the family came home in the evening, and Defendant played video games in his bedroom while the victim's mother used the computer and the children played. The children went to bed around 8:30 p.m. Defendant went to check on the children, and they appeared to be sleeping. He returned to playing video games. Sometime later, the victim's mother went into the bedroom where Defendant was playing video games and began yelling at Defendant. She called him a "sick bastard" and told him that she "wished [he] would die." She told Defendant "what [S.B.] had said." Defendant stated that he was "shocked." The victim's mother told Defendant to leave the residence. Defendant initially denied the allegations, but the victim's mother asked him repeatedly, and "finally [he] said, 'Yes, I did it just to shut her up.'" Defendant packed his belongings, and the victim's mother drove Defendant to her sister and brother-in-law's house. One week later, Defendant's sister-in-law called the police "and had him escorted from her residence." Defendant stated to Officer Kindle that he "never touched [S.B.] in a sexual way."

The victim was eleven years old at the time of trial. She was eight years old at the time of the incident. Her mother and Defendant were married at that time, and she called Defendant "Dad." S.B. testified that on Easter Sunday in 2011, her family attended a cookout at her aunt's house. They returned home that evening, and she and her younger sister went to bed in the bedroom that they shared. After S.B. laid down, Defendant came into her bedroom. He reached under her covers and touched her on her "no-no spot." She testified that he moved his finger around inside of her. She testified that it hurt. Defendant did not say anything to S.B. After the incident, S.B. told her mother what happened.

The victim's mother, R.C. (we will refer to the mother by her initials to withhold the victim's identity), testified that on the night of the incident, Defendant put the victim to bed. R.C. was using the computer, and S.B. ran to her crying and upset and told her, "'Daddy touched my no-no spot.'" S.B. told her that "'it hurt really bad.'" R.C. testified that Defendant was in the back bedroom and seemed to have heard what S.B. told her. R.C. confronted Defendant, and Defendant did not immediately respond. Defendant then said, "'It's the first time and the last time.'"

R.C. testified that she and Defendant "were teenage sweethearts" and they "loved each [other] very much." She testified, "at that moment my whole world just kind of was torn."

She tried to remain calm, and she offered to take Defendant to her sister's house until he found another place to live. The following day, she reported the incident to the police.

Defendant later wrote a letter to R.C., in which he stated,

> I'm sorry for whatever I did that night but I just don't know what was going on. All I remember is, is that [E]aster after we left Rick[']s house after the BBQ I don't remember a lot. I [re]member us being at home, the kids in bed, I thought I was layin [sic] down in our bed. I thought you were coming to bed. I don't really know what happened from that night up to like a few weeks after [E]aster. I thought I was with you at home but when I realized I wasn't with you and I was with Rob, and my family asking me about what was going on, and the detective said that I did all that, I just know that if something happened I'm sorry from the bottom of my heart and soul. I can't see me doing anything like I've heard or that I've seen on paper.

> . . . .

> I'm sorry for what has happened[.] I wish I knew what happened. Oh I smoked with Rick that day on [E]aster while we BBQ. I don't know if that helps you. But I'm s[o]r[r]y. I love you and miss you and the girls very much. I love you.

On cross-examination, R.C. testified that it was not uncommon for Defendant to put the kids to bed. She testified that nothing unusual happened at the barbeque on Easter and that Defendant did not appear to be acting any differently than he normally acted. R.C. denied that she and Defendant had any discussions about divorce prior to the incident involving the victim or that Defendant had stated to her that he intended to take their daughter to Michigan with him. R.C. testified that she was not aware of Defendant having suffered from blackouts.

Defendant testified that he and R.C. began living together in 2005. They married and moved to Tennessee in 2009. He described their relationship as "up and down." He testified that he began dating R.C. when she was pregnant with S.B. He testified that he was involved in taking care of S.B. and her siblings. Defendant testified that he and R.C. began to argue more before the alleged incident. He told R.C. about his plans to go "back home" to Michigan. He testified that one week prior to Easter, S.B. scribbled on a note from her teacher, and R.C. "became angry [and] she went after [S.B.] in a fit of rage and started persistently hitting her." Defendant stopped R.C. from hitting the victim, and R.C. physically

3

attacked Defendant. Defendant testified that he called his family in Michigan and made arrangements to return to Michigan sometime between May 3-5, 2011.

Defendant testified that Easter was a "normal day." The family went to a barbeque at a friend's house. They returned home between 7:00 and 7:45 p.m., and the children got themselves ready for bed. Defendant testified that he checked on the children every night after they went to bed. Defendant denied that he touched the victim inappropriately. He testified, "[t]here was no way that I could have, would have or should have." Defendant testified that he wrote letters to R.C. after the incident "apologiz[ing] for what happened throughout the marriage, [his] behavior with her and whatever caused the marriage to fall apart. That was what the letter had to deal with." Defendant acknowledged that he did not mention his plans to move to Michigan in his statement to Officer Kindle or in his letter to R.C.

### *Sentencing hearing*

At the sentencing hearing, the presentence report was admitted as an exhibit. No testimony or other evidence was presented. The trial court found that Defendant was a Range I offender. The trial court stated that it had considered the evidence presented at trial, the presentence report, arguments by the parties, enhancement and mitigating factors, and the nature and characteristics of the criminal conduct involved. The trial court applied enhancement factors (1), (4), and (7). The trial court found that Defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Defendant was 28 years old at the time of the offenses in this case. The presentence report showed that Defendant had prior convictions in Michigan for child abuse and domestic violence at the age of 19; spouse abuse at the age of 20; and assault against a police officer and domestic violence at the age of 24. The trial court noted that "those are all crimes of violence[.]" The trial court also found that the victim in this case was particularly vulnerable because of her age and that the offense was committed to gratify Defendant's desire for pleasure or excitement. The trial court found only one mitigating factor, that Defendant's criminal conduct neither caused nor threatened serious bodily injury, but the trial court stated that it gave that factor "as little weight as possible." The trial court imposed a sentence of six years for Defendant's conviction for incest and 25 years for his conviction for rape of a child. The court further found by a preponderance of the evidence that Defendant's record of criminal activity was extensive and ordered that Defendant's sentences be served consecutively. The court stated,

> All right, well in looking at the factors that the court can consider I have to
> find that by a preponderance of the evidence and I find based on the nature
> of [Defendant's] prior convictions that he has what I consider to be an

4

extensive record of criminal activity, and, again, I think it's the types of convictions that are very disturbing to the court. I mean they're either domestic violence, spouse abuse, assault on a police officer, domestic violence or child abuse and they all relate to family individuals. I mean the child in this case was in the family. I mean this is an incest charge. And based upon those factors I find that he has what I would consider to be an extensive record of criminal activity and because of that in my opinion this sentence, this 6[-]year sentence should be – I mean child rape is bad enough but I mean to do it in my opinion in the household is even worse in many respects because you're using a position of essentially trust. I didn't find that as an enhancing factor but I guess that really does. I mean you abuse a position of private trust when you're able to be that close to a child of that age to whom you have in a sense acted as a father figure. So again, in my opinion this is a matter for which you should receive consecutive sentencing.

## *Analysis*

### *Sufficiency of the evidence*

On appeal, Defendant challenges the sufficiency of the evidence to sustain his convictions. When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 278, 161 L. Ed. 2d 560 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Rape of a child is the "unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). Relevant to this case, a defendant commits incest when the defendant "engages in sexual penetration . . . with a person, knowing the person to be, without regard to legitimacy . . . [t]he [defendant's] . . . stepchild[.]" T.C.A. § 39-15-302(a)(1).

Taken in the light most favorable to the State, the evidence shows that on Easter night, 2011, Defendant, the victim's stepfather, reached under the victim's covers and clothing and put his finger inside the victim's vagina while she was lying in bed. The victim testified that the act of penetration hurt her. The victim told her mother. When the victim's mother confronted Defendant, Defendant admitted the victim's allegation and stated that he would never do it again. After his arrest, Defendant wrote a letter to the victim's mother, in which he stated that he did not remember the night of the incident. He wrote, "I just know that if something happened I'm sorry from the bottom of my heart and soul. I can't see me doing anything like I've heard or that I've seen on paper."

In his brief to this court, Defendant asserts that his admission to the victim's mother was false and that "[i]t was only after multiple times of being relentlessly questioned by [the victim's mother] that he told her he did it just to shut her up." He also argues that the evidence is insufficient because his testimony conflicted with the testimony of the victim. As stated previously, the credibility of the witnesses is within the purview of the jury. *See State v. Millsaps*, 30 S.W.3d 364, 368 (Tenn. Crim. App. 2000) (stating that "the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier[ ] of fact"). In the instant case, the jury obviously resolved the issue of witness credibility in favor of the State.

Defendant argues that the State failed to prove that he committed any act for the purpose of sexual arousal or gratification. However, a sexual act for the purpose of sexual gratification or arousal is not an element of either of the offenses of rape of a child and incest. Both offenses require proof of sexual penetration, as defined above. The victim testified that Defendant reached under her covers and clothing and inserted his finger into her vagina. The evidence is sufficient to support the convictions. Defendant is not entitled to relief on this issue.

*Sentencing*

6

Defendant also challenges the trial court's imposition of consecutive sentencing. Defendant contends that none of the statutory criteria contained in Tennessee Code Annotated section 40-35-115(b) for consecutive sentencing apply in his case. The State responds that the trial court acted within its discretion in ordering that the Defendant serve his sentences consecutively.

Our supreme court has held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 859-62 (Tenn. 2013). Thus, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2) and (4). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal.")); *see also State v. Bise*, 380 S.W.3d 682, 705 (Tenn. 2012). Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. Here, the trial court applied factor (2), that Defendant is an offender whose history of criminal activity is extensive. Because the trial court provided reasons on the record establishing one of the seven statutory grounds for consecutive sentencing, we afford the trial court's decision a presumption of reasonableness. Furthermore, the record shows that the trial court followed the principles and purposes of the Sentencing Act, and the record supports the trial court's findings. We conclude that the trial court did not abuse its discretion by ordering Defendant's sentences to run consecutively. Defendant is not entitled to relief on this issue.

Having reviewed the briefs of the parties and the entire record in this case, we find no error and affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

8